ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **BRYAN TORRES MIRANDA**<br><br>Apelante<br><br>v.<br><br>**FMC AGRICULTURAL CARIBE INDUSTRIES, LTD**<br><br>Apelado | KLAN202400593 | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **Manatí**<br><br>Civil Núm.: **AR2021CV01650**<br><br>Sobre: Procedimiento Sumario (Ley Núm. 2-1961) Despido Injustificado (Ley Núm. 80-1976) |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de noviembre de 2024.

Comparece ante nos, mediante *Apelación Civil*, el señor Bryan Torres Miranda (Sr. Torres Miranda o Apelante) y nos solicita que revoquemos la *Sentencia* emitida el 3 de junio de 2024 por el Tribunal de Primera Instancia, Sala Superior de Manatí (TPI).[1] Mediante la *Sentencia*, el TPI declaró No Ha Lugar la *Querella*[2] presentada por el Apelante en contra de FMC Agricultural Caribe Industries, LTD (FMC o Apelado).

No siendo necesario el alegato en oposición de la parte apelada para la resolución de la controversia ante nuestra consideración, prescindimos de su comparecencia conforme a la Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.

---

[1] Apéndice de *Apelación Civil*, Anejo XXVII, págs. 163-274. Notificada y archivada en autos el 4 de junio de 2024.
[2] *Íd.*, Anejo I, págs. 1-3.

7(B)(5), con el propósito de lograr el más justo y eficiente despacho del caso de autos.

Por las razones que discutiremos a continuación, confirmamos la *Sentencia* emitida por el TPI.

**I.**

El 10 de junio de 2013, el Sr. Torres Miranda comenzó a trabajar para FMC luego de suscribir un contrato de empleo a tiempo indeterminado con la empresa. En el año 2017, FMC adquirió la planta de DuPont localizada en el municipio de Manatí, y la continuó operando en la misma localidad, reteniendo la mayoría de la plantilla de empleados. Además, adoptó las normas, políticas, procesos y Reglas de Conducta de DuPont que esta utilizaba.[3] El 4 de diciembre de 2017, el Sr. Torres Miranda acusó recibo de las Reglas de Conducta revisadas al 3 de julio de 2017.

Por otro lado, FMC también contaba con un Código de Ética,[4] que se encontraba disponible para fácil acceso de forma virtual, para todos los empleados de FMC. Por lo tanto, las normas y políticas de conducta de FMC se regían conjuntamente por el Código de Ética y las Reglas de Conducta. Ambos documentos contenían disposiciones advirtiéndole a los empleados que la violación de alguna de las normas contenidas podría resultar en acciones disciplinarias, incluyendo el despido del empleado. Conforme a los procedimientos de FMC, todo empleado tenía el deber de acusar recibo del Código de Ética y de las Reglas de Conducta. A partir del 2020, debido a la pandemia de COVID-19, los acuses de recibo se comenzaron a hacer digitalmente. Además, FMC sostenía reuniones anuales con todos sus empleados, incluyendo al Sr. Torres Miranda, para adiestrarlos nuevamente sobre las normas de conducta.

---

[3] *Íd.*, Anejo XVII, págs. 99-109.
[4] *Íd.*, págs. 75-98.

El 4 de agosto de 2018, FMC convocó al Sr. Torres Miranda a una reunión en la que discutió una amonestación escrita como consecuencia de una queja enviada a la planta de Manatí.[5] Surge que la planta de Corteva, localizada en El Paso, Texas, le reportó a FMC que encontró un *scoop* en un saco de *Nicosulfuron Technical* durante el proceso de descarga al sistema de carga de formulación.[6] El *scoop* es un instrumento utilizado en la planta de Manatí para ajuste de peso de la materia empacada. Durante la reunión, el Sr. Torres Miranda fue adiestrado en torno al impacto que tuvo aquella negligencia. Este evento constituyó la primera amonestación realizada al Sr. Torres Miranda.

El 14 de febrero de 2019, el Sr. Torres Miranda recibió una segunda amonestación escrita en torno a otra infracción a las políticas de calidad de FMC.[7] Esta segunda amonestación ocurrió tras el Sr. Torres Miranda permitir que otro empleado rubricara una hoja de tareas realizadas a nombre del otro empleado, a pesar de haber sido el Sr. Torres Miranda quien realizó el trabajo. FMC discutió este evento con el Apelante, advirtiéndole que independientemente de que él hubiera consentido verbalmente a que el otro empleado firmara por él, se esperaba que fuese el empleado que realizó el trabajo quien iniciara y firmara las hojas oficiales.

Así las cosas, el 14 de marzo de 2019, el Sr. Torres Miranda fue advertido por FMC que, de incurrir en la misma violación o de incumplir con otras normas, políticas, procesos o prácticas de la empresa, estaría expuesto a medidas disciplinarias, incluyendo su despido inmediato.

---

[5] *Íd.*, Anejo XV, pág. 64.
[6] *Íd.*
[7] *Íd.*, pág. 65.

Posteriormente, el 12 de febrero de 2021, el Sr. Torres Miranda fue amonestado por tercera vez. En esta ocasión, surge que el Sr. Torres Miranda se ausentó siete (7) días durante el mes de enero de 2021 sin contar con licencias por enfermedad.[8] FMC discutió la amonestación escrita con el Sr. Torres Miranda, y este se comprometió a cumplir con las normas y políticas de conducta.

En las tres amonestaciones realizadas, el Sr. Torres Miranda tuvo una oportunidad de explicar su conducta o proveer excusas mediante una sección del formulario que permitía comentarios sobre la amonestación. No obstante, el Apelante dejó dichas secciones en blanco en las tres amonestaciones escritas recibidas y discutidas.

El 17 de abril de 2021, el Sr. Torres Miranda se le acercó a su supervisora, la señora Consuelo Aidé Cartagena Medina (Sra. Cartagena Medina), de forma molesta, con coraje y utilizando palabras soeces.[9] Le dijo a la Sra. Cartagena Medina que no le interesaba continuar con la certificación del DCS y que "eso era una mierda". La certificación del DCS forma parte de un adiestramiento del plan de progresión de los empleados, mediante el cual se le enseñaba a los empleados como usar una máquina de mayor complejidad. Dicha conducta hizo que la Sra. Cartagena Medina se sintiera incómoda y sorprendida. En dicha interacción, el Sr. Torres Medina le entregó su identificación de empleado, lo cual la Sra. Cartagena Medina interpretó como un desinterés de parte del Sr. Torres Medina para continuar como empleado.[10] En consecuencia, el Sr. Torres Miranda fue escoltado fuera de los predios de la planta por el señor Manuel Laureano, empleado de seguridad de FMC.

---

[8] *Íd.*, pág. 66.
[9] *Íd.*, págs. 67-70.
[10] *Íd.*

Por el incidente ocurrido el 17 de abril de 2021, el 24 de abril de 2021, FMC le notificó al Sr. Torres Miranda una cuarta amonestación escrita por haberle faltado el respeto a la Sra. Cartagena Medina y rehusarse a cumplir con el adiestramiento requerido para su trabajo, incurriendo en insubordinación.[11] Nuevamente, el formulario utilizado para notificar la amonestación contenía una sección para que el Sr. Torres Miranda incluyera sus comentarios, pero este la dejó en blanco. Al comprometerse a cumplir con las políticas de conducta de FMC y reunirse con la señora Viviana Pagán Miranda (Sra. Pagán Miranda), Gerente de Recursos Humanos de FMC, el 24 de abril de 2021, la Sra. Pagán Miranda le informó que estaba suspendido de empleo y sueldo por tres (3) días y que estaría sujeto a un periodo probatorio de noventa (90) días.

Entre el 24 de abril de 2021 y el 30 de julio de 2021, la Sra. Pagán Miranda y el señor Armando Méndez Muñiz (Sr. Méndez Muñiz), Gerente de Operaciones de FMC, realizaron investigaciones relacionadas con la conducta del Sr. Torres Miranda. En su investigación, la Sra. Pagán Miranda concluyó que los empleados de FMC no se sentían cómodos con el Sr. Torres Miranda y que éste siempre estaba sólo.

El 26 de julio de 2021, el Sr. Méndez Muñiz realizó una serie de entrevistas con los señores Charlie Martínez, Israel Suárez, Héctor Bracero, Juan Oquendo y Axel Dávila, todos empleados del área de manufactura de FMC, área en la que trabajaba el Sr. Torres Miranda para aquella fecha. Los empleados entrevistados le señalaron que se sentían incómodos con la conducta del Apelante y que lo habían observado haciendo gestos con sus manos, simulando un arma de fuego y disparándola, así como el uso de palabras

---

[11] *Íd.*

soeces, cantar canciones con temas de violencia y muerte, conducta antisocial y crear un ambiente laboral negativo.

La conducta del Sr. Torres Miranda, descrita por sus compañeros de trabajo, violentó la Regla 1.7 de las Reglas de Conducta de FMC, que prohíbe "[e]l uso de lenguaje profano, abusivo o amenazante, peleas, amenazar físicamente a otros individuos[...]". Surge también que para los años 2014-2016, el Sr. Torres Miranda recibió una calificación de "No Cumple" en la sección de asistencia. Para el 2018, el Apelante recibió una calificación de "No Cumple" en las áreas de "Manejo de Estándares de Seguridad y Calidad", "Conocimiento y Dirección del Negocio" y en el área que discute si la ejecución del trabajo refleja la comprensión de la misión, visión y valores de FMC. Además, el señor Rafael Iguina Rivera, empleado de FMC y compañero del Sr. Torres Miranda, había solicitado y recibido una orden de protección a su favor y en contra del Apelante al quejarse de recibir amenazas, y por ser víctima de acecho y hostigamiento.[12] Así las cosas, el 30 de julio de 2021, el Sr. Torres Miranda fue despedido por FMC.

Al entender que su despido fue injustificado, el 16 de noviembre de 2021, el Sr. Torres Miranda presentó una *Querella* al amparo de la Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118 *et seq.* (Ley Núm. 2) y de la Ley Sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185a *et seq.* (Ley Núm. 80), en contra de FMC.[13] En síntesis, alegó que, en su despido, no medió justa causa, por lo que solicitó su derecho a la mesada, cuya compensación estimaba en $29,547.10. El 3 de diciembre de 2021, FMC presentó su *Contestación a Querella.*[14]

---

[12] El Sr. Iguina Rivera eventualmente desistió de la orden de protección.
[13] Apéndice, *supra*, Anejo I, págs. 1-3.
[14] *Íd.*, Anejo II, págs. 4-7.

Tras varios trámites procesales, el 28 de febrero de 2023, FMC presentó una *Moción In Limine* en la que solicitó que cierta prueba documental fuera considerada récord de negocio según las Reglas de Evidencia.[15] Solicitó que se admitiera la totalidad del expediente de la investigación realizada por FMC entre el 24 de abril y el 30 de julio de 2021. El 10 de marzo de 2023, el Sr. Torres Miranda presentó una *Moción en Cumplimiento de Orden Sobre "Moción In Limine"*, en la que señaló que no tenía objeción a que se autenticara el expediente de la investigación, siempre y cuando FMC cumpliera con las formalidades de las Reglas 109 y 110 de Evidencia.[16] No obstante, solicitó que todo testigo anunciado que sea renunciado, sea puesto a la disposición del Sr. Torres Miranda.[17] Aun así el 23 de marzo de 2023, el TPI declaró No Ha Lugar a la *Moción In Limine* y le ordenó a FMC que "presentara en el juicio en su fondo los 4 testigos anunciados en el informe de conferencia con antelación al juicio".[18] Estos eran los señores Héctor Bracero, Juan Oquendo, Israel Suárez y Charlie Martínez, los empleados y compañeros de trabajo entrevistados el 26 de julio de 2021 por el Sr. Méndez Muñiz.

El TPI celebró vistas el 29 de marzo de 2023, 8 de junio de 2023, 12 de julio de 2023, 21 de septiembre de 2023 y 12 de octubre de 2023, en la que testificaron el Sr. Méndez Muñiz, Sra. Cartagena Medina y la Sra. Pagán Miranda. No obstante, los señores Bracero, Oquendo, Suárez y Martínez no fueron presentados como testigos por FMC. En consecuencia, el 12 de octubre de 2023, el Sr. Torres Miranda presentó una *Moción en Solicitud de Aplicación de la Regla 304(5) de Evidencia 32 L.P.R.A. Ap. VI, R. 304(5).*[19] Según la *Moción* presentada, la Regla 304 establece una serie de presunciones controvertibles. Entre estas, la Regla 304(5) reconoce que "[t]oda

---

[15] *Íd.*, Anejo X, págs. 43-47.
[16] *Íd.*, Anejo XII, pág. 51.
[17] *Íd.*
[18] *Íd.*, Anejo XIV, págs. 56-57.
[19] *Íd.*, Anejo XIX, págs. 113-114.

evidencia voluntariamente suprimida resultará adversa si se ofreciere". Regla 304(5) de Evidencia, 32 LPRA Ap. VI, R. 304(5). Además, alegó que FMC no le puso aquellos testigos a su disposición.

El 26 de octubre de 2023, FMC presentó una *Moción en Cumplimiento de Orden y en Oposición a Moción en Solicitud de Aplicación de la Regla 304(5) de Evidencia 32 L.P.R.A. Ap. VI, R. 304 (5)*.[20] Alegó que FMC no suprimió evidencia. Con relación a los cuatro (4) testigos, FMC aclaró que en el *Informe de Conferencia con Antelación al Juicio,* presentado el 31 de enero de 2023, FMC indicó que "[l]os individuos Héctor Bracero, Juan Oquendo, Israel Suárez y Charlie Martínez están anunciados como potenciales testigos de la parte querellada pendiente a la resolución de una *Moción In Limine* [...]".[21] En dicho *Informe*, FMC también señaló que "[l]a eliminación de dichos testigos no debe levantar presunción adversa alguna" y que "FMC se reserva el derecho a anunciar testigos adicionales o acortar la presente lista sin que se levante presunción alguna".[22]

Tras un análisis completo de la prueba presentada, argumentos de las partes y testimonios de los testigos, el 3 de junio de 2024, el TPI emitió la *Sentencia* de la que se recurre. En esta, atendió la *Moción en Solicitud de Aplicación de la Regla 304(5) de Evidencia 32 L.P.R.A. Ap. VI, R. 304(5),* concluyendo que:

> Este Tribunal entiende que no procede aplicar la presunción contenida en la Regla 304 (5) de Evidencia, *supra*, al testimonio que hubieran vertido los potenciales testigos anunciados por la parte querellada en el Informe de conferencia con antelación al juicio como "potenciales testigos". Lo anterior, toda vez que, la parte querellante planteó la aplicación de la misma de manera tardía, es decir, después que la parte querellada terminó con el desfile de su prueba documental y testifical y sometió su caso ante el Tribunal. Asimismo, los cuatro "potenciales testigos" fueron identificados de esa manera por la parte querellada en el Informe de conferencia con antelación

---

[20] *Íd.*, Anejo XXI, págs. 116-119.
[21] *Íd.*, Anejo IX, pág. 39.
[22] *Íd.*

al juicio, y realizó una reserva que consignó en dicho Informe en torno a esos cuatro testigos. La parte querellada argumentó en sala que el presentar a los testigos de referencia, constituiría la presentación de prueba acumulativa, que no abonaría a la economía procesal, y que por el contrario, añadiría más días de juicio al caso. Asimismo argumenta que tenía el peso de la prueba y que entendía que podía presentar el testimonio de dichos testigos mediante documentación que constituía *récords de negocio*. Por todos los fundamentos antes consignados entendemos que le asiste la razón a la parte querellada.[23]

En cuanto a la controversia sobre el despido del Sr. Torres Miranda, el TPI concluyó que:

En el caso ante nuestra consideración, conforme surge de los hechos previamente descritos, lejos del mero capricho del patrono o su libre arbitrio, fueron las propias actuaciones del [Sr. Torres Miranda] las que motivaron su despido. Es decir, **su reiterado incumplimiento con las políticas y procedimientos de la Compañía** de las cuales el querellante tenía conocimiento, conforme surge del testimonio bajo juramento de los testigos presentados por la parte querellada, **el incurrir en conductas prohibidas por las Reglas de Conducta** [(]al violar las Reglas número 1.1, 1.3, 1.4, 1.7, 1.14 y 1.18) y **al violar disposiciones del Código de Ética de FMC**, las cuales afectaron el funcionamiento de la empresa, **su actitud amenazante hacia sus compañeros de trabajo**, **el incurrir en un patrón de conducta impropia**, **el incumplimiento con las normas y estándares de calidad y seguridad**, **las quejas repetidas en su contra de empleados** de [FMC], **el incumplir con instrucciones y políticas del patrono** y **afectar la ordenada marcha y funcionamiento de la empresa**, no dejaron otra alternativa a la Compañía más que despedirlo.[24]

En consecuencia, el TPI determinó No Ha Lugar la *Querella*.

Inconforme con aquella determinación, el 14 de junio de 2024, el Sr. Torres Miranda presentó la *Apelación Civil* ante nuestra consideración. En dicha comparecencia, señaló los siguientes errores:

**A. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE MANATÍ, AL NO APLICAR LA PRESUNCIÓN ADVERSA DE LA REGLA 304(5) DE EVIDENCIA; A PESAR DE QUE EL TPI HABÍA DECLARADO NO HA LUGAR LA MOCIÓN IN LIMINE; QUE HABÍA ORDENADO QUE DICHOS TESTIGOS DECLARARAN EN EL JUICIO Y SE CITARON A TRAVÉS DE LA REPRESENTACIÓN**

---

[23] *Íd.*, Anejo XXVII, págs. 242-243.
[24] *Íd.*, pág. 265. (Énfasis nuestro).

LEGAL DE LA PARTE APELADA; QUE AL COMIENZO DEL JUICIO SE HIZO EL SEÑALAMIENTO SOBRE LA FALTA DE DICHOS TESTIGOS Y SE HABÍA SOLICITADO QUE SE PUSIERAN A LA DISPOSICIÓN DE LA COMPARECIENTE; QUE LA PARTE APELADA EN NINGÚN MOMENTO PUSO A DICHOS TESTIGOS A LA DISPOSICIÓN DE LA COMPARECIENTE Y QUE AL MOMENTO EN EL QUE EL TPI TOMÓ LA DECISIÓN FINAL FUE YA CONCLUIDO EL JUICIO Y EN CLARO PERJUICIO DE LA COMPARECIENTE.

B. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE MANATÍ, AL DECLARAR [C]ON LUGAR LA QUERELLA PRESENTADA, A PESAR QUE LA PARTE NO CUMPLIÓ CON EL ARTÍCULO 2(E) DE LA LEY 80, *SUPRA*; A PESAR QUE ACEPTAR PRUEBA INADMISIBLE Y OPORTUNAMENTE OBJETADA; ANTE LA FALTA DE PRUEBA SOBRE LA ALEGADA CONDUCTA INTIMIDANTE EN LA QUE INCURRIÓ EL DEMANDANTE; A PESAR QUE DE LA INVESTIGACIÓN REALIZADA QUE FUE PRESENTADA COMO RÉCORD DE NEGOCIO Y NO PARA PROBAR LA VERACIDAD DE LO ALLÍ INDICADO; QUE LOS ALEGADOS QUEJOSOS RECONOCEN Y ACEPTAN QUE EL QUERELLANTE SE MANTENÍA AISLADO, QUE SE PASABA [CANTANDO] Y QUE UTILIZABA LOS "EAR PLUGS"; QUE LOS 3 TESTIGOS QUE DECLARARON RECONOCEN QUE NO EXISTE PROHIBICIÓN ALGUNA SOBRE CANTAR O UTILIZAR LOS "EAR PLUGS" EN ÁREAS QUE NO SON OBLIGATORIAS; NI MUCHO MENOS ERA OBLIGATORIO EL QUE LOS EMPLEADOS CONFRATERNIZARAN EN LAS FACILIDADES; QUE NO SE VERIFICÓ, NI SE CONSERVÓ LAS GRABACIONES DE LAS CÁMARAS DE SEGURIDAD EN DONDE SE REFLEJARA LOS ALEGADOS GESTOS AMENAZANTES, NI TAMPOCO SE ENTREVISTÓ A LA COMPAÑERA INMEDIATA CON LA QUE COMPARTÍA LABORES Y QUE EL QUERELLANTE LES CONFIRMÓ QUE EN EFECTO COMPONÍA Y CANTABA CANCIONES DE REGUETÓN, ENTRE OTROS.

II.

A.

"[L]a sentencia que dicta un Juez de Primera Instancia es el producto final de un activo y complejo proceso forense". L. Rivera Román, *La apreciación de prueba en el Tribunal de Primera Instancia y en el Tribunal de Apelaciones* en *Perspectivas en la práctica apelativa*, San Juan, Ed. SITUM, 2018, pág. 101. Estas gozan de una presunción de corrección y la parte que impugne una

determinación del Tribunal de Primera Instancia tiene el peso de la prueba para refutarla. *Íd.*

En vista de lo anterior, los foros apelativos debemos brindar deferencia a las determinaciones de hechos formuladas por el tribunal de instancia. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 740 (2007). Esta deferencia yace en que el foro primario está en mejor posición que un tribunal apelativo para realizar la determinación de credibilidad. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013). Se le impone un respeto a la labor del tribunal de instancia en aquilatar la credibilidad, dado que los foros apelativos sólo poseemos récords mudos e inexpresivos. *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009); *Pérez Cruz v. Hospital La Concepción*, 115 DPR 721, 728 (1984). Pues, en gran medida, la determinación de credibilidad depende de observar la manera en que la persona testigo declara, apreciar sus gestos, titubeos, contradicciones, entre otros factores que van formando gradualmente la convicción en cuanto a la verdad en la conciencia de la persona juzgadora. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67-68 (2009).

Cónsono con lo anterior, la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2, dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". De esta forma, en ausencia de error manifiesto, prejuicio, parcialidad o pasión, los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad ni las determinaciones de hechos efectuadas por el foro primario. *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 778 (2022); *Sucn. Pagán Berrios v. UPR y otros*, 206 DPR 317, 336

(2021); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021).

Se incurre en prejuicio, parcialidad o pasión, cuando la persona juzgadora actúa motivada "por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". *Dávila Nieves v. Meléndez Marín, supra*, pág. 782. Además, "el error manifiesto ocurre cuando el foro apelativo queda convencido de que se cometió un error, a pesar de que haya evidencia que sostenga las conclusiones de hecho del tribunal, porque existe un conflicto entre las conclusiones y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Ortiz Ortiz v. Medtronic, supra*, pág. 779.

De otra forma, únicamente se alterará el dictamen del tribunal de instancia en una circunstancia de error manifiesto cuando, de un examen detenido de toda la prueba, el foro apelativo esté convencido que la persona juzgadora descartó injustificadamente elementos probatorios importantes o fundó su criterio en testimonios de escaso valor o inherentemente improbables o increíbles. *C. Brewer PR, Inc. v. Rodríguez*, 100 DPR 826, 830 (1972). Por ello, nuestra facultad para sustituir el criterio del foro primario está limitada a las instancias en las que, a la luz de la prueba admitida, no existe base suficiente para apoyar su determinación. *Ortiz Ortiz v. Medtronic, supra*. Por otro lado, los tribunales apelativos nos encontramos en la misma posición del foro primario para evaluar la prueba documental o pericial que fundamentan las determinaciones de hecho. *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 918 (2016); *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011).

**B.**

En nuestra jurisdicción, la Ley Núm. 80, *supra,* regula las circunstancias en que un patrono privado puede despedir a un empleado, así clasificando lo que constituiría un despido injustificado. Esta Ley "se creó para desalentar la incidencia de despidos injustificados en Puerto Rico y para proveer remedios justicieros a las personas que son despedidas sin justa causa". *Diaz Santiago v. International Textiles,* 195 DPR 862, 872 (2016). La misma no hace ilegal el despido sin justa causa o por mero arbitrio del patrono, sino provee un mecanismo reparador para que el empleado injustamente despedido tenga un remedio al ver sus derechos violentados. *Diaz v. Wyndham Hotel Corp.,* 155 DPR 364, 377 (2001). El remedio que provee la Ley Núm. 80 es la mesada.

"De ahí entonces que la propia Ley Núm. 80 enumere y defina las circunstancias que envuelven o se consideren justa causa, esto con el propósito de determinar cuándo el patrono puede ejercer dicha prerrogativa sin tan siquiera tener que satisfacer la mencionada compensación, o mesada". *Íd.* Para esto, el Artículo 2 de la Ley 80 dispone que:

> Se entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono. Además, se entenderá por justa causa aquellas razones que afecten el buen y normal funcionamiento de un establecimiento que incluyen, entre otras, las siguientes:
> (a) **Que el empleado incurra en un patrón de conducta impropia o desordenada**.
> (b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. **Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono**.
> (c) **Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado**.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento.

No se considerará justa causa para el despido de un empleado la colaboración o expresiones hechas por éste, relacionadas con el negocio de su patrono, en una investigación ante cualquier foro administrativo, judicial o legislativo en Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada según la ley. En este último caso, el empleado así despedido tendrá derecho, además de cualquier otra adjudicación que correspondiere, a que se ordene su inmediata restitución en el empleo y a que se le compense por una cantidad igual a los salarios y beneficios dejados de percibir desde la fecha del despido hasta que un tribunal ordene la reposición en el empleo.

Ley Núm. 80, *supra*, Artículo 2. (Énfasis nuestro).

Cónsono con lo anterior, el Tribunal Supremo ha "reiterado, en un sinnúmero de ocasiones, que bajo las disposiciones de la referida Ley Núm. 80, constituye justa causa para el despido aquella que tiene su origen, no ya en el libre arbitrio o capricho del patrono, sino aquella vinculada a la ordenada marcha y normal funcionamiento de la empresa en cuestión". *Díaz v. Wyndham Hotel Corp., supra,* págs. 376-377.

## C.

La Regla 304(5) de Evidencia de Puerto Rico, *supra*, R. 304(5), establece una serie de presunciones controvertibles, entre las cuales se enumera la que está en controversia en el caso de autos: "[t]oda evidencia voluntariamente suprimida resultará adversa si se ofreciere". *Íd.* La Regla 302 de Evidencia, por su parte, dispone que "[e]n una acción civil, una presunción impone a la parte contra la

cual se establece la presunción el peso de la prueba para demostrar la inexistencia del hecho presumido". *Íd.,* R. 302.

Nos dice el tratadista Rolando Emmanuelli Jiménez que "[p]ara la aplicación del inciso 5 es indispensable la voluntariedad de la supresión de la prueba". R. Emmanuelli Jiménez, *Prontuario de derecho probatorio puertorriqueño*, 4ª ed. rev., Puerto Rico, Ed. SITUM, 2015, pág. 172. A su vez, existe una interacción evidente entre la Regla 304(5) y la Regla 110(G), que dispone que "cuando pareciere que una parte, teniendo disponible una prueba más firme y satisfactoria, ofrece una más débil y menos satisfactoria, la evidencia ofrecida deberá considerarse con sospecha". Reglas de Evidencia, *supra*, R. 110(G). No deben confundirse ambas Reglas, por lo que la Regla 304(5) establece una presunción controvertible y la Regla 110(G) va al valor probatorio de la prueba presentada. "La Regla [110(G)] deja margen para la especulación del magistrado lo que resulta peligroso ante el poder que confiere el inciso para descartar una prueba". R. Emmanuelli Jiménez, *op. cit.*, pág. 129.

Por lo tanto, al analizar la Regla 304(5), *supra*, debemos mirar los elementos necesarios para activar la presunción. De su texto, podemos extrapolar que la presunción se activa cuando: (1) una parte tiene disponible una prueba; (2) que no fue presentada en juicio; (3) en el ejercicio voluntario de la discreción de la parte. La lógica nos lleva a concluir que la prueba no fue presentada porque resultaba perjudicial a la parte que la ofreció.

> Un caso común es cuando no se somete en evidencia toda la prueba anunciada o **cuando no se sientan a declarar todos los testigos**. En este último caso, **es necesario poner a disposición de las otras partes a los testigos para que puedan entrevistarlos y decidir si los utilizarán en el juicio**.
>
> R. Emmanuelli Jiménez, *op. cit.*, pág. 172. (Énfasis nuestro).

**D.**

Si una parte tuviese la oportunidad y el derecho de presentar prueba, pero por error el tribunal la excluye, ante una objeción oportuna, la parte perjudicada podrá señalar dicho error ante un foro apelativo. Reglas 104 y 105 de Evidencia, *supra*, Rs. 104 y 105. A modo de excepción, si la parte perjudicada no objetó oportunamente la admisión o exclusión errónea de una prueba, un foro apelativo podrá aún revisar dicha determinación si no corregir el error constituyese un "fracaso de la justicia". *Íd.*, R. 106.

Así, conjuntamente, las Reglas 104-106 de Evidencia regulan el efecto de admisión o exclusión errónea de prueba. Comenzando nuestro análisis con la Regla 104, esta agrupa los aspectos procesales para la admisibilidad o exclusión de la prueba. Lee como sigue:

**REGLA 104. ADMISIÓN O EXCLUSIÓN ERRÓNEA DE EVIDENCIA**

**(a) Requisito de objeción**. — La parte perjudicada por la admisión errónea de evidencia debe presentar una objeción oportuna, específica y correcta o una moción para que se elimine del récord evidencia erróneamente admitida cuando el fundamento para objetar surge con posterioridad. Si el fundamento de la objeción surge claramente del contexto del ofrecimiento de la evidencia, no será necesario aludir a tal fundamento.

**(b) Oferta de prueba**. — En el caso de exclusión errónea de prueba, la parte perjudicada deberá invocar el fundamento específico para la admisibilidad de la evidencia ofrecida y hacer una oferta de prueba de forma que surja claramente cuál es la evidencia que ha sido excluida y la naturaleza, propósito y pertinencia para la cual se ofrece. No será necesario invocar tal fundamento específico ni hacer la oferta de prueba cuando resultan evidentes del contexto del ofrecimiento. El tribunal permitirá la oferta de prueba y determinará si debe hacerse mediante un resumen de la evidencia ofrecida o el interrogatorio correspondiente. El tribunal podrá añadir cualquier manifestación que demuestre el carácter de la evidencia, la forma en que fue ofrecida, la objeción a su admisión y la resolución sobre la exclusión.

**(c) Objeción u oferta de prueba continua**. — Una vez el tribunal dicta una resolución definitiva en el récord, para admitir o excluir prueba, ya sea antes o durante el juicio, una parte no tiene que renovar una objeción u

oferta de prueba para conservar su derecho a plantear el asunto en apelación.

**(d) Casos por jurado**. — En los casos por jurado, los procedimientos se llevarán a cabo de tal forma que se evite que evidencia inadmisible sea sugerida al jurado mediante preguntas, aseveraciones u ofertas de prueba.

*Íd.*, R. 104.

Para nuestro análisis, debemos referirnos al inciso (B) de la Regla 104, puesto que este trata sobre la exclusión errónea de prueba testifical. "Para que el tribunal apelativo pueda evaluar el efecto del error de la prueba, debe conocer el contenido del testimonio excluido. La parte que presenta al testigo debe entonces hacer la oferta de prueba". E.L. Chiesa Aponte, *Reglas de Evidencia comentadas*, 2ª ed. rev., Puerto Rico, Ed. SITUM, 2024, pág. 12. Ahora bien, aunque el inciso (B) requiere que se haga una oferta de la prueba excluida, el mismo incorpora lo resuelto en *Pueblo v. Franceschini*, 110 DPR 794 (1981) y "dispone que no será necesaria la oferta de prueba cuando del contexto de la situación surja claramente el contenido de la evidencia excluida". E.L. Chiesa Aponte, *op. cit.*, pág. 13.

> La Regla 104 sólo exige que se traiga a colación la naturaleza, propósito y pertinencia de la evidencia. La "naturaleza" es la esencia y propiedad característica de cada ser. Por tanto, es necesario establecer en qué consiste la evidencia que se ofrece. "A propósito", significa algo adecuado u oportuno para lo que se desea o para el fin que se destina. Luego, se debe establecer con qué fin es que se presenta la prueba. "Pertinente" significa: que viene a propósito; conducente o concerniente al pleito.

R. Emmanuelli Jiménez, *op. cit.*, pág. 75.

Satisfechos los requisitos de la Regla 104, la Regla 105 de Evidencia regula el efecto de la exclusión errónea de la prueba. Esta dispone que:

**REGLA 105. EFECTO DE ERROR EN LA ADMISIÓN O EXCLUSIÓN DE EVIDENCIA.**

**(a) Regla general**. — No se dejará sin efecto una determinación de admisión o exclusión errónea de

evidencia ni se revocará por ello sentencia o decisión alguna a menos que:

> (1) La parte perjudicada con la admisión o exclusión de evidencia hubiere satisfecho los requisitos de objeción, fundamento u oferta de prueba establecidos en la Regla 104, y

> (2) el tribunal que considera el señalamiento estime que **la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida o decisión cuya revocación se solicita**.

**(b) Error constitucional**. — Si el error en la admisión o exclusión constituye una violación a un derecho constitucional de la persona acusada, el tribunal apelativo sólo confirmará la decisión si está convencido más allá de duda razonable que, de no haberse cometido el error, el resultado hubiera sido el mismo.

Reglas de Evidencia, *supra*, R. 105. (Énfasis nuestro).

El mero hecho de que una parte perjudicada por la exclusión errónea de prueba haya objetado la exclusión o hecho una oferta de prueba oportuna no significa que el tribunal apelativo debe revocar la determinación emitida por el foro en instancia. "Puede haberse cometido un error de derecho probatorio y el tribunal que considera su efecto sobre la resolución o sentencia recurrida estimar que no tuvo efecto significativo en el resultado del caso, por lo que se confirma el dictamen a pesar del error". E.L. Chiesa Aponte, *op. cit.*, pág. 15.

> Bajo la Regla 105, el tribunal apelativo debe realizar una evaluación del error y su efecto en la sentencia que se impugna a base de criterios de probabilidad, a veces no claramente expresados, determinar si de no haberse cometido el error, lo más probable sería que el resultado hubiera sido distinto.

> [...]

> Si el tribunal apelativo considera que el error se cometió, pero no fue un factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita, se trata de un error no perjudicial o "harmless error".

R. Emmanuelli Jiménez, *op. cit.*, pág. 79. Véase, además, *Ross v. Clark*, 478 U.S. 570 (1986).

Finalmente, en el caso que la parte perjudicada por la exclusión errónea de una prueba no haya objetado o hecho una

oferta de prueba oportuna, la Regla 106 permite que, a modo de excepción, se revoque la determinación si: (1) la comisión del error es evidente; y, (2) el error tuvo un efecto decisivo o sustancial sobre la sentencia. "[E]s el tipo de error que, de no haberse cometido, lo más probable hubiera producido un resultado distinto". E.L. Chiesa Aponte, *op. cit.*, pág. 18.

### E.

Como regla general, no será admisible prueba de referencia cuando el declarante de aquella prueba esté disponible para testificar en el juicio. Regla 804 de Evidencia, *supra*, R. 804. "Se excluye prueba de referencia por razón de que la parte contra quien se ofrece la evidencia no ha tenido oportunidad de confrontarse con el declarante, particularmente en cuanto a la oportunidad para contrainterrogarlo". E.L. Chiesa Aponte, *op. cit.*, pág. 249.

No obstante su prohibición, la Regla de prueba de referencia no es absoluta, por lo que la Regla 805 permite una serie de excepciones a la misma. La Regla 805(F) de Evidencia, *supra*, R. 805(F), permite que una parte presente los "récords de actividades que se realizan con regularidad", aun cuando los declarantes estén disponibles. La Regla dispone que:

> **REGLA 805. EXCEPCIONES A LA REGLA DE PRUEBA DE REFERENCIA AUNQUE LA PERSONA DECLARANTE ESTÉ DISPONIBLE COMO TESTIGO.**
>
> **(f) Récords de actividades que se realizan con regularidad**. — Un escrito, informe, récord, memorando o compilación de datos —en cualquier forma— relativo a actos, sucesos, condiciones, opiniones o diagnósticos que se hayan preparado en o cerca del momento en que éstos surgieron, por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta, **si dichos récords se efectuaron en el curso de una actividad de negocios realizada con regularidad, y si la preparación de dicho escrito, informe, récord, memorando o compilación de datos se hizo en el curso regular de dicha actividad de negocio, según lo demuestre el testimonio de su custodio o de alguna otra persona testigo cualificada**, o según se demuestre mediante una certificación que cumpla con las disposiciones de la Regla 902(k) o con algún estatuto que permita dicha

certificación, a menos que la fuente de información, el método o las circunstancias de su preparación inspiren falta de confiabilidad. El término "negocio", según se utiliza en este inciso, incluye, además de negocio propiamente, una actividad gubernamental y todo tipo de institución, asociación, profesión, ocupación y vocación, con o sin fines de lucro.

*Íd.* (Énfasis nuestro).

Por lo tanto, aunque el inciso (F) de la Regla 805 permite que se presente un récord de negocio sin el testimonio del declarante, sí es necesario que testifique el custodio de aquel récord. Tanto el profesor Chiesa Aponte, como el tratadista Emmanuelli Jiménez, nos dicen que la Regla 805(F) sigue el texto de la Regla Federal de Evidencia 803(6), Fed. Rules Evid. 803(6), por lo que la frase "en el curso de una actividad de negocios realizada con regularidad" corresponde al texto de la regla federal: "*in the course of a regularly conducted business activity*". E.L. Chiesa Aponte, *op. cit.*, págs. 267-268; R. Emmanuelli Jiménez, *op. cit.*, pág. 509.

> Para que sea admisible una prueba de referencia bajo este inciso, el escrito o registro debe haber sido hecho durante el curso regular del negocio; en un momento próximo al momento del acto condición o suceso que se anotó en el récord; el custodio del escrito o récord o cualquier otro testigo debe declarar sobre su identidad y método de preparación, y; la fuente de información, método y momento de la preparación del registro son de tal manera que indican su confiabilidad.

R. Emmanuelli Jiménez, *op. cit.*, pág. 512.

Finalmente, la Regla 107 de Evidencia, *supra*, permite que una prueba sea admitida de manera limitada. Esta Regla dispone que cuando una prueba sea admisible para un propósito pero inadmisible para otro propósito, "el Tribunal, previa solicitud al efecto, limitará la admisibilidad de esa evidencia a su alcance apropiado[...]". *Íd.*, R. 107.

> Los dos casos de "admisibilidad limitada" son: (i) evidencia admisible contra una parte, pero inadmisible contra otra parte y (ii) evidencia admisible para un fin X, pero inadmisible para un fin Y. [...] La regla tiene poca importancia o ninguna importancia en casos sin jurado, pues el juez, como profesional del derecho, sabrá cuál es el alcance legítimo de la evidencia,

consciente de que no podrá tenerla en consideración para el fin ilegítimo.

E.L. Chiesa Aponte, *op. cit.*, pág. 20.

### III.

En el caso de autos, el Sr. Torres Miranda ha señalado dos errores, ambos relacionados con la apreciación de la prueba y aplicación de las Reglas de Evidencia. En síntesis, el Apelante alegó que: (1) el TPI erró al no aplicar la presunción controvertible que dispone la Regla 304(5) de Evidencia; y, (2) que el TPI erró al no obligar que FMC hiciera disponible a los señores Héctor Bracero, Juan Oquendo, Israel Suárez y Charlie Martínez para que el Apelante los entrevistara y pudiese determinar si los sentaría a testificar en el juicio. En consecuencia, nos ha solicitado que revoquemos la *Sentencia* que declaró No Ha Lugar la *Querella* presentada por el Apelante sobre despido injustificado.

En primer lugar, no existe duda sobre que la parte Apelada incluyó a los cuatro (4) testigos en el *Informe de Conferencia con Antelación al Juicio*, aunque los anunció como "potenciales testigos".[25] Para propósitos del juicio, ni las Reglas de Evidencia, *supra*, ni las Reglas de Procedimiento Civil, *supra*, establecen distinciones entre los testigos anunciados, salvo entre los testigos de ocurrencia y los peritos. Regla 23.1 de Procedimiento Civil, *supra*, R. 23.1; Reglas 701-703 de Evidencia, *supra*, Rs. 701-703. La realidad es que, como no es necesario sentar a todos los testigos anunciados, todos los testigos son potenciales. En consecuencia, al FMC anunciarlos y no presentarlos en el juicio, el no hacerlo debió haber activado la presunción que establece la Regla 304(5) de Evidencia, *supra*, R. 304(5). Esta dispone que "[t]oda evidencia voluntariamente suprimida resultará adversa si se ofreciere". *Íd.*

---

[25] *Íd.*, Anejo IX, págs. 38-39.

Ante el derecho de la parte apelante a solicitar la presunción, el TPI debió haberla concedido. El Sr. Torres Miranda solicitó la aplicación de dicha presunción oportunamente, habiéndola hecho durante el juicio. Consiguientemente, al no haber presentado a los cuatro (4) testigos, FMC debió haberlos puesto a la disposición del Sr. Torres Miranda para que este pudiese entrevistarlos y decidir si los iba a utilizar en el juicio. No lo hizo. Por lo tanto, el TPI cometió un error al no aplicar la presunción.

No obstante el error del TPI, no existe razón para revocar la *Sentencia*, puesto que dicho error no hubiese cambiado la conclusión del caso, según el derecho aplicable y los hechos probados. Veamos.

La parte apelante anunció los cuatro (4) testigos con el propósito de establecer las bases para la admisibilidad de los récords de negocio que detallaban la investigación realizada por el Sr. Méndez Muñiz, Gerente de Operaciones de FMC. Además, en la *Moción In Limine* presentada el 28 de febrero de 2023, el Apelado señaló que el testimonio de los cuatro (4) testigos no iba dirigido a probar la verdad de lo aseverado en el récord de negocio, sino para demostrar que el patrono llevó a cabo una investigación hacia la conducta del Sr. Torres Miranda. Además, FMC sentó a testificar a la Sra. Pagán Miranda, Gerente de Recursos Humanos, como testigo en cuanto a su participación en la investigación y como custodio de dicho récord. Durante su testimonio, la Sra. Pagán Miranda testificó sobre el proceso de la investigación realizada por FMC, las reuniones que sostuvo con el Sr. Torres Miranda en las que se discutió su conducta, las medidas disciplinarias tomadas y los fundamentos por los cuales FMC determinó despedir al Sr. Torres Miranda de su empleo.[26] También, la Sra. Pagán Miranda es la custodia del récord

---

[26] Transcripción del Juicio en su Fondo, págs. 387-391.

de negocio presentado, por lo que su testimonio cumple con le Regla 805(F) de Evidencia para admitir el récord, demostrando que FMC realizó una investigación antes de despedir al Apelante.

Tras un análisis de la prueba presentada, surge con toda claridad que las entrevistas realizadas por el Sr. Méndez Muñiz y la Sra. Pagán Miranda no fueron la razón del despido del Sr. Torres Miranda. Durante sus años de empleo, el Sr. Torres Miranda fue amonestado en varias ocasiones. En cada ocasión que fue amonestado, el Apelante se reunió con el personal de FMC, en las que tuvo la oportunidad de hacer constar sus comentarios sobre los incidentes y se comprometió en mejorar su desempeño laboral. En todas estas ocasiones, fue advertido de las consecuencias de futuras infracciones, que podía resultar en su despido. No obstante, la conducta del Sr. Torres Miranda no mejoró.

Luego del incidente del 17 de abril de 2021, el Sr. Torres Miranda fue suspendido del trabajo por un periodo y luego le fue permitido regresar en un periodo probatorio. Durante dicho periodo, FMC evaluó sus aptitudes y destrezas para realizar las tareas asignadas y responsabilidades de su puesto. FMC realizó una investigación y serie de entrevistas con los empleados sobre la conducta del Sr. Torres Miranda. No obstante, según el testimonio de la Sra. Pagán Miranda, el motivo del despido fue como consecuencia de las disciplinas progresivas aplicadas como resultado de su conducta previa. El Sr. Torres Miranda conoció en todo momento de las consecuencias de su incumplimiento con las Reglas de Conducta y Código de Ética que mantenía FMC en sus facilidades. La parte apelada presentó prueba de las veces que el Sr. Torres Miranda incumplió con sus deberes como empleado y le faltó el respeto a sus superiores. Según la Ley Núm. 80, *supra*, constituye justa causa para un despido:

(a) Que el empleado incurra en un patrón de conducta impropia o desordenada.

(b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

No tenemos duda de que el Sr. Torres Miranda incurrió en la conducta tipificada en la Ley Núm. 80. En consecuencia, su despido fue justificado, y el TPI hubiese concluido lo mismo con o sin el récord de negocios, los testimonios de los cuatro (4) testigos o la presunción que provee la Regla 304(5) de Evidencia, puesto que estos no hubiesen derrotado, mediante preponderancia de la prueba, el caso que presentó FMC.

En consecuencia, aun habiendo el TPI cometido un error probatorio al no aplicar la presunción de la Regla 304(5) de Evidencia, es forzoso confirmar la *Sentencia* recurrida.

**IV.**

Por los fundamentos discutidos, confirmamos la *Sentencia* del TPI.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones